LOUISVILLE & N. R. Co. *v.* BATE and others, Board of Examiners,
etc., and PICKARD, Comptroller, etc.

EAST TENNESSEE, V. & G. R. Co. *v.* SAME.

(*Circuit Court, M. D. Tennessee.* October, 1884.)

TAXATION—ASSESSMENT OF RAILROAD PROPERTY—INJUNCTION—CERTIORARI.

The board of examiners organized and acting under the Tennessee statute
will not be enjoined from certifying the record of the assessment of railroad
property for taxation, and delivering the same to the comptroller, nor will the
comptroller be enjoined from receiving said record and certifying said assess-
ments to the counties and towns of the state, and from taking steps to collect
any taxes claimed by the state upon said assessments in excess of amount ad-
mitted to be due, as such assessments may be reviewed by the writ of *certiorari*
and *supersedeas* in the state court, as decided in *Louisville & N. R. Co.* v. *Bate,*
12 Lea, 573.

In Equity.

*Ed. Baxter, J. M. Dickinson,* and *Andrew Allison,* for Louisville &
Nashville Railway Company.

*W. M. Baxter,* for East Tennessee, Virginia & Georgia Railroad
Company.

*Vertrees & Brother* and *Champion & Head,* for defendants.

MATTHEWS, Justice. Motions for injunctions *pendente lite* heard
at chambers in Cincinnati, September 17 and 18, 1884. The com-
plainant in the first of these cases, the Louisville & Nashville Rail-
road Company, is a corporation of Kentucky, and a citizen of that
state, and invokes the jurisdiction of this court on that ground. It
alleges that the wrongs charged against the defendants are in viola-
tion of its rights, as secured by the constitution of Tennessee and by
that of the United States, and are remediable in equity. The East
Tennessee, Virginia & Georgia Railroad Company is a corporation
organized under the laws of Tennessee, and is a citizen of that state.
It predicates its right to the relief prayed for solely on the ground
that the case made in the bill is one which arises under the constitu-
tion of the United States. The defendants Bate, Thomas, and Nunn
are officers of the state of Tennessee, comprising a board of examin-
ers of railway tax assessments for the years 1883 and 1884. They
have before them, for their consideration and action under the laws
of Tennessee, the record of the proceedings and action of the state
board of railroad tax assessors, which embodies the findings of the
latter in valuing, for purposes of taxation, the property of the com-
plainants claimed to be subject to taxation in Tennessee. When the
defendants the board of examiners have acted on the record of these
findings, either approving and confirming or lessening or increasing
the values reported to them by the board of assessors, they are re-
quired to certify the result to the defendant Pickard, the comptrol-
ler, who ascertains the amount due to the state thereupon, according

to the rate fixed by law, and is required to collect the same, and certifies to the counties and municipal bodies the several amounts due to them respectively for taxes thereon, to be collected by them on their own account in the mode specified by law.

The board of assessors appointed by the governor are charged, under the revenue laws of the state, with the duty of valuing all railroad property; and moreover, for purposes of taxation, in making their valuation they are required to look to the capital stock, the corporate property, the franchises of each company, as well as the gross receipts, and the individual stock of each shareholder. Knowledge in these particulars is derived from a schedule required to be furnished to them by each railroad company, and by their own personal inspection, and by any other proof they may deem necessary; but all proof taken by them must be reduced to writing, and must be under oath and subscribed by the witnesses, with notice to the company interested, and the right and opportunity to appear, cross-examine, and be heard. Having ascertained the character and total value of all the property, wherever situated, of any railroad company, excluding what is known as localized property, taxable in the county and municipality where it is situated, the board of assessors are required to divide the same by the number of miles in the entire length of the road, and the result is the value per mile of the property of such company for the purpose of taxation. The value per mile thus ascertained shall be multiplied by the number of miles in the state, and the product thereof shall be the sum to be taxed to the railroad company for state purposes; and the value per mile as thus ascertained shall be multiplied by the number of miles in each county, and the product shall be the sum to be taxed for county purposes; and the value per mile so ascertained shall be multiplied by the number of miles, or fractions thereof, in any corporated town, and the product shall be the sum to be taxed for municipal purposes; and these several sums to be taxed, thus ascertained, they shall certify to the comptroller, together with the facts and all evidence taken by them. This record the comptroller is required to submit at once to the governor, treasurer, and secretary of state, who are constituted a board of examiners. They are to examine the questions of assessment and valuation, as upon an appeal upon the record made up by the railroad tax assessors, as a matter of course, whether the taxpayer except or not, and they may change it in any particular, and to any extent they see fit, so as to fix the real value of any railroad. The law provides for no time nor place of meeting of the board of examiners, for no notice to the tax-payer or the public, and for no hearing before them. They take no additional proofs, but act exclusively upon the record of the board of assessors, and their action in fixing the taxable value of every railroad is declared to be final and conclusive; and until they act the findings of the board of assessors have no legal effect as assessments.

A board of assessors appointed for the purpose of valuing railroad property for assessment and taxation for the years 1883 and 1884, reported the value of the main stem of the Louisville & Nashville Railroad, extending from Louisville, Kentucky, to Nashville, Tennessee, at $34,927.29½ per mile; and that of its Nashville & Decatur Division, extending from Nashville, Tennessee, to Decatur, in Alabama, leased from other companies, and operated by it, at $19,-002.59¼ per mile. The same board at the same time valued the main stem of the East Tennessee, Virginia & Georgia Railroad at $20,005 per mile, a branch called the Ooltewah Cut-off, at $15,000 per mile, the Alabama Division, so called, of the same company, at $16,000 per mile, and its North Carolina Division at $11,500 per mile. After these assessments had passed to the hands of the board of examiners, and after two of them had affirmed the action of the board of assessors, and while the third was preparing a dissenting report, writs of *certiorari* and *supersedeas* issued out of the circuit court of the state for Davidson county, on the petition of the railroad companies interested, were served upon them, and came by a process of appeal in error from that court to the supreme court of the state. The opinion and judgment of that court in the case are reported under the name of *Louisville & N. R. Co.* v. *Bate*, 12 Lea, 573.

It appears from that report that the grounds laid in the petition for the writs were, substantially, (1) non-compliance on the part of the board of assessors with section 4 of the act of 1877, which required all proof taken by them to be reduced to writing, under oath, upon notice to the parties interested, and opportunity to be present and cross-examine witnesses; (2) that in the mode of estimating values there were various errors of law. Motions were made to dismiss these writs on the ground of want of jurisdiction in the court; the thirteenth section of the act of 1877 declaring "that the action of the board of examiners, provided for by the sixth section of the act of March 20, 1875, shall be final and conclusive as to the value of a railroad." The motions to dismiss, however, were overruled, and the jurisdiction of the court sustained. The judgment of the court on the point was based upon the tenth section of the sixth article of the state constitution, which provides that "the judges or justices of inferior courts of law and equity shall have power, in civil cases, to issue writs of *certiorari* to remove any cause, or the transcript of the record thereof, from any inferior jurisdiction into such court of law, on sufficient cause, supported by oath or affirmation;" and upon section 3123 of the Code of Tennessee, in execution of this constitutional clause, that "the writ of *certiorari* may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or other officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, where, in the judgment of the court, there is no other plain, speedy, or adequate remedy." In delivering the opinion of the court, TURNEY, J., said:

"In *Wade* v. *Murry*, 2 Sneed, 56, Judge McKinney, delivering the opinion of a majority of the court, says: 'In a case involving a question as to the legal competency of the judge, or showing such a substantial departure from the course of proceeding prescribed in the statute as would render the proceedings void, the *certiorari* would be the proper remedy.' I am of opinion, with Judge Totten, that the revisory jurisdiction extends to any question of error or illegality in the proceedings which has the effect to prejudice the rights of a party. I also think the legislature has no power to say that any citizen shall be deprived of the right to have all questions touching his life, liberty, or property heard, passed upon, and determined by the regular and constitutional courts of the state. Such right is inalienable. It is unnecessary, in the present case, to go beyond the majority opinion in *Wade* v. *Murry*."

Proceeding to consider the case upon its merits, the opinion continues:

"Although the boards may be officers of the state, and proposing to discharge their duties as such, yet, if they overleap the prescribed limits of the law under which they act, it is the right of those about to be injured to ask for, and the duty of the courts to grant, a restraining relief. We think the petitioners make *prima facie* cases for relief. What are the facts? Did the boards exceed their authority? As we have seen, the act requires all the proof to be reduced to writing, sworn to and subscribed, etc., and upon this proof the boards to act in fixing their valuations for taxation. An examination of the record shows the values fixed by the board in excess of that shown by the proof. We cannot supply this defect by presuming the officers did their whole duty. We presume they have, as they are required to do, returned to the proper deposits all the proof upon which they acted. The statute confers extraordinary power, and is in derogation of common right, and must be strictly construed and observed. When called upon, as here, the boards must show they have kept to the statute. This is not alone in the matter of proof in most of the cases before [us.] Nor does it appear that the parties had notice of the taking of the depositions—or some of them, at least—which appear in the record. It may be the assessors based their estimates of value upon their personal knowledge formed from inspection and examination. This they might have done, but like all other testimony it should have been reduced to writing, and an opportunity to cross-examine allowed to the parties in interest."

For these reasons, in those cases, including those of the present complainants, in which proper and timely exceptions were made to the action of the board of assessors before them, their proceedings and valuation were set aside. The reversal was thus limited because, as the court said, "we cannot hold the assessors have erred upon a question not submitted to them, especially when the exceptions substantially waive it." The court also passed upon other objections taken to the proceedings of the assessors, as follows: That the main stem of the road was valued separately from branches and leased lines operated by the same company, holding that as to such they must be governed by the same rules as were the original owners, and as separate roads; that the road-bed, franchise, and superstructure were assessed together as a unit, which was held to be proper; that the rolling stock and other distributable property, defined by the statute to consist of road-bed, rolling stock, franchise, choses in action, and personal property having no actual *situs*, and which it declares

shall be valued by the assessors separate from the other property of the company, and the total value ascertained wheresoever situated, whether within or without the state, was valued in the aggregate as a unit, which was also declared to be according to the intention of the law; and that the exemption of $1,000 allowed by the statute was deducted only from the value of the main stem, and not from that of the branches and leased lines, which was also upheld. These valuations having been thus set aside, a new proceeding before the board of assessors became necessary. This took place, the place of one member who had resigned being filled by a new appointment.

In June, 1884, the board of assessors reported a new valuation as follows: Of the main stem of the Louisville & Nashville Railroad, $50,000 per mile; of the Decatur Division, $25,191.03½ per mile,— being an increase in the former of over $15,000 per mile, or over 40 per cent., and of the latter an increase of over $6,000 per mile, or over 30 per cent.; of the main stem of the East Tennessee, Virginia & Georgia Railroad, $24,000 per mile; of the North Carolina Branch of the same, $10,000 per mile; of the Ooltewah Branch or Cut-off, $16,000 per mile. It is alleged in the present bills that the board of assessors, in making this last valuation, had before them in proof substantially the same state of facts as was before the former board on which the first valuation was made which was set aside on *certiorari;* that the present board, in making their valuation, disregarded the evidence, acted arbitrarily, and not in good faith, for the purposes of a fair and just valuation, but to oppress and punish complainants; that the valuation is excessive, whether it is considered in reference to the intrinsic value of the property itself or compared with other railroad property in the state or elsewhere in the United States, or with the value at which the real estate and other property of individual tax-payers is assessed by the assessors charged with that duty, for purposes of taxation, it being charged in regard to them that they systematically and intentionally have made such valuation at much less than the fair actual value of such property; that deductions permitted to other tax-payers are denied to them; that the property of the complainants is assessed for taxation for the year 1884 upon an amount and value as of 1883, although all other property in the state is assessed upon an annual valuation; and that the assessors have included in the property valued large amounts of property which, although belonging to complainants respectively, have no taxable *situs* in the state of Tennessee.

It is further alleged that the values set forth by the complainants respectively in the schedules submitted by them are the full and fair values of all the property owned by them, situated within the state and subject to taxation therein, and they are severally willing to pay the taxes chargeable thereon, and offer so to do. It is further charged in these bills as follows:

(1) That the proceedings to be taken in reference to these valua-

tions by the board of examiners under the statute are void, contrary to the fourteenth amendment to the constitution of the United States, because not due process of law, inasmuch as no opportunity is given by the statute or other law for the company to appear before the board of examiners and be heard by them; no time nor place is fixed for the meeting of the board of examiners, nor is any notice required to be given to the parties, nor any opportunity afforded to except to their conclusions, or to have the same reviewed or corrected.

(2) That by article 2, § 28, of the constitution of Tennessee, it is provided that "all property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the state. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value;" that, in violation of this provision of the state constitution, the legislature of the state has by law discriminated in favor of domestic corporations of the state engaged in manufacturing articles of the produce of the state by taxing them upon their corporate property alone, as in case of individuals and firms, while it is alleged that railroad companies are taxed upon the value of their corporate property as enhanced by the value of the franchise, and by a consideration of the value of the shares of its capital stock in the hands of its stockholders.

(3) That a further discrimination is made by law against the complainants in this: that, while individual tax-payers are entitled to deduct from the value of money and choses in action the amount of debts owing by them, incurred in the business which produced the taxable assets, no such deduction is permitted to be made by railroad companies, who are entitled to deduct $1,000 only from their taxable property; and that, in point of fact, these complainants are sought to be assessed for taxation upon a large amount of choses in action, without deduction, while owing debts which individuals would be allowed to deduct, equal in amount to such assets; and that this discrimination is in violation of the fourteenth amendment to the constitution of the United States, inasmuch as it denies to them the equal protection of the laws.

(4) That the general revenue law, providing for the valuation of the property of individual tax-payers by local assessors, contains provisions for a fair and just equalization of such assessments in each county by boards of equalization, with the right on the part of each tax-payer to be heard by that board as to any complaint; and in case of refusal by that board to grant redress of any grievance, the county court has jurisdiction to give relief; whereas, in respect to railroad property, the board of examiners has arbitrary power over the whole matter of its assessment, without any opportunity given to show excessive or unequal assessments in any case; and this discrimination is alleged to be in violation of the fourteenth amendment to the con-

stitution of the United States, being a denial of the equal protection of the laws.

(5) That a further discrimination is made against railroad property, inasmuch as it is taxed for two successive years on the same assessment, while all other property is taxed annually upon assessments made each year.

(6) That the law imposes a tax upon the assessed value of all personal property belonging to a railroad company, including stocks, bonds, cash, notes, accounts, etc., and railroad supplies and material, which, in the case of a railroad company, like the Louisville & Nashville Railroad Company, being a foreign corporation, have no *situs* for taxable purposes in Tennessee, being held by the company at its home office in the state of which it is a citizen, and which, if to be considered for purposes of taxation at all, in other jurisdictions, as giving value to visible property located in those jurisdictions respectively, should be apportioned in any such estimate upon the whole system of railroad lines, of whose operation they are the product, and not exclusively upon that part of the line called the main stem; that in point of fact, as to that company, its system embraces many lines, extending into other states, while under the proposed assessment, and under the law authorizing it, the whole of such personal property and choses in action, valued at more than a million and a half of dollars, has been assessed for taxation as exclusively pertaining to so much only of that system as embraces the line of road between Louisville and Nashville.

It is alleged in the bills that if the board of examiners shall certify to the defendant Pickard, the comptroller of the state, the assessments made by the assessors, as returned to them, or as modified by them, that officer will proceed to collect the amount of taxes chargeable to them and payable to the state, by distraint, and will certify to the several counties and towns through which the roads run, the amount upon which those municipalities are severally authorized to tax said roads, who will proceed to collect such sums, also, by summary process.

The prayer of the bills is that the assessments made by the board of assessors, and now before the board of examiners for their consideration and action, be declared null and void, at least so far as they exceed the valuation returned by the railroad companies themselves, which are alleged to be full and true; and that the defendants, who compose the board of examiners, be perpetually enjoined from certifying the record of said assessments, and from delivering the same to defendant Pickard, the comptroller, and the defendant Pickard be enjoined from receiving said record, and from certifying said assessments to any of the counties and towns of the state, and from taking any steps to collect any tax claimed by the state of Tennessee, upon said assessments, in excess of the amount admitted to be due, and for an injunction *pendente lite* to the same effect.

To the present application for such an injunction the obvious answer is made, in argument on the part of the defendants, that it is premature.

The alleged inequalities, illegalities, and errors in the proposed valuation, committed by the board of assessors, are, it must be admitted, as yet inchoate and ineffective. That valuation can have no validity or force whatever as an assessment until confirmed by the board of examiners and certified by them to the comptroller. The whole matter is within the control of that board, and they have not yet acted. What their action may be we do not know; and there is no ground on which we have a right judicially to proceed, for believing that their future action upon the record of the assessors may not correct every error, inequality, and injustice now complained of. Even on the supposition entertained in the bills, that the legislation itself, under which the assessment must be made, is open to the objections insisted upon, nevertheless, as that whole question of valuation is submitted to the board of examiners, who are not, in any respect, bound by the proceedings or findings of the board of assessors, it may be that the ultimate and effective assessment made by the board of examiners will, when made, be found to conform entirely as to its amount to the estimates admitted to be correct by the complainants themselves. If so, there can be no room for complaint, even though the methods by which such a result is reached should be shown to be erroneous or illegal. It is the result, and that alone, of which there can be any ground for judicial complaint. If that proves to be just, any error of principle in establishing it would be even less than *damnum absque injuria.* No other result can be rightly anticipated; and that furnishes a conclusive answer to the application as now made. It does not weaken the force of this conclusion to say that, imputing only just intentions to the board of examiners, they must necessarily err because of the vices pointed out in the legislation by which it must be presumed they will be governed, and which necessitate injurious discriminations against the complainants; because, in addition to the consideration already mentioned, and which is conclusive that the question is one of amount, which, if not greater than complainants admit to be correct, cannot be for any other reasons objected to, it must be remembered that the law, which it is presumed the board of examiners will recognize and follow, is not merely the letter of detached statutes, which, considered by themselves, might mislead into injustice and inequality, but it is that letter of the law, construed as it must be, and moulded, if need be, to conform to the larger and supreme law of the constitution of the state and of the United States, which are invoked by the complainants as securing to them all the relief they pray for. And in case any errors of law should be committed by the board of examiners in their action upon the record of the proceedings and valuation of the board of assessors, an appeal for their correction, as has been seen by

the decision of the supreme court of Tennessee in the case in 12 Lea, 573, may be had by *certiorari and supersedeas*, issuing out of the state courts, notwithstanding the language of the statute declaring the result certified by the board of examiners to be final and conclusive.

It is, indeed, charged in the present bills of complaint that the complainants fear and believe that the board of examiners will purposely attempt to defeat their remedy by certifying the result of their action to the comptroller, without notice to them, and before they can arrest the proceeding by a *certiorari*, after which, it is averred, it will be too late to resort to that remedy; because, by the act of March 21, 1873, no suit is permitted against an officer charged by law with the collection of revenue, except for the recovery of money paid under protest, as having been illegally exacted, to be brought within 30 days after payment; all writs for the prevention of the collection of any revenue claimed, or to hinder or delay the collection of the same, being expressly forbidden, either by injunction, *supersedeas*, prohibition, or any other writ or process whatever.  The question whether the writ of *certiorari and supersedeas* might issue after the record of the assessors had been acted on and certified to the comptroller was not involved in nor decided by the case in 12 Lea, 573; because in that case the writ was issued and served while the record was still in the hands of the board of examiners, and before it had been certified and remitted to the comptroller.  Whether the right to the writ is so far fixed by the constitution of the state that no such exception as that made by the act of 1873 can be effective, is, therefore, an undecided question, the answer to which, however, it is not necessary to discuss or anticipate.

It is the logical result of the decision of the supreme court of Tennessee affirming its jurisdiction by *certiorari* to review and reverse the action of the board of examiners upon the record of the board of assessors, before that record has been certified to the comptroller, that there is an interval of time between the final action of that board and their certificate thereof to the comptroller, recognized by the law, in which the party interested has a right of appeal, and, as that right of appeal is secured by the law, it is not to be presumed that it will be unlawfully denied by the officers of the law.  There are, it is true, allegations, in the present bills of complaint, made as the ground of the fear and belief expressed by the complainants as to the purpose entertained by the members of the board of examiners, who are defendants, by undue means to defeat their right of appeal from the result of their intended action upon the assessments complained of.  These allegations relate to what took place on the occasion of the first assessment, from which the inference is sought to be drawn that the attempt was there made by the same board to defeat the appeal in that case by secrecy and stratagem,—not, however, successful.

It would not be seemly or profitable to discuss here the question

whether the facts so alleged warrant the inference sought to be deduced. They certainly furnish no ground which can, consistently with judicial propriety, be made a justification for the fears expressed on the part of the complainants as to the future. At the time referred to, of the former assessments, the right of appeal by *certiorari and supersedeas* had not been affirmed by the supreme court of Tennessee, and the board of examiners could not be justly accused of endeavoring to defeat a right which it is most likely they did not believe to have an existence. The situation is now different. The supreme court of the state has spoken, and upon deliberation has declared the legal rights of the complainant. It is not for me to assume that the chief officers of the state, by law forming the board of examiners, and made defendants to these bills, will be disloyal to the constitution and law of the state by a contempt of the authority and jurisdiction of its judicial tribunals. I shall, therefore, act in the present matter upon the contrary assumption, that when they shall have acted according to their own convictions of duty upon the record of the assessment of the property of these complainants, submitted to them by the board of assessors, reasonable notice will be given to the parties, and sufficient delay before certifying and remitting the result of their action to the comptroller to enable them to avail themselves of the right to have that action judicially reviewed by the courts of the state. A failure in these particulars will necessarily give rise to two questions: *First,* whether the proceeding in that event can be considered process of law; and, *second,* whether such a deprivation of the opportunity to resort to a remedy given by the law confers upon a court of equity jurisdiction to give the relief which might otherwise have been obtained at law. These questions are not before me now.

The motions for injunctions are therefore now denied and overruled, with leave, however, to the parties respectively hereafter to renew them upon supplemental bills, if hereafter they should be advised to file them.